## ROBERSON v. UNITED STATES.*

(Circuit Court of Appeals, Eighth Circuit. October 18, 1922.)

### No. 5861.

1. Post office ⟨☜⟩48(8)—Proof held not at variance.

In prosecution for using the mails to effect a fraudulent scheme, evidence *held* not to present a substantial variance from the indictment.

2. Criminal law ⟨☜⟩670—Evidence objected to as hearsay held properly excluded in absence of statement by counsel as to purpose for which it was claimed to be admissible.

The action of the trial court in excluding, as hearsay, testimony of accused as to discussion he had with third person, could not be complained of by accused, where no offer was made by his counsel to introduce such discussion on the ground that he desired to show accused's good faith.

3. Criminal law ⟨☜⟩419, 420(10)—Evidence held hearsay.

In prosecution under Penal Code, § 215 (Comp. St. § 10385), for using the mails to effect a fraudulent scheme, selling corporation stock, testimony by accused that the institution of investigation by post office inspectors was stated to him by stockholders and stock salesmen to be the reason why stockholders did not pay their notes to the company *held* properly excluded as hearsay, as accused could have given the facts with reference to the failure of stockholders to pay after investigation began, not what they or stock salesmen told him.

4. Criminal law ⟨☜⟩1136—Evidence prejudicial only to acquitted defendants not cause for complaint by convicted defendant.

Where testimony was prejudicial only to defendants who were acquitted, the admission of such testimony could not be complained of by a defendant who was convicted.

5. Criminal law ⟨☜⟩338(3)—Evidence as to stock salesman's statement held properly admitted.

In prosecution under Penal Code, § 215 (Comp. St. § 10385), for using the mails to effect a fraudulent scheme, selling corporation stock, per-

---

*Rehearing denied January 10, 1923.

. ⁄ mitting a witness to state that a stock salesman stated to witness that the company had bought or contracted for certain iron mines was not error, where the government introduced a letter written by accused to "representatives in the field" stating that the company intended such purchase, evidently intended to give stock salesmen information to be used by them regarding such purchase.

In Error to the District Court of the United States for the District of New Mexico; Colin Neblett, Judge.

Charles A. Roberson was convicted of using the mails to effect a fraudulent scheme, and brings error. Affirmed.

A. B. Renehan, of Santa Fé, N. M. (W. A. Gillenwater, of Clovis, N. M., on the brief), for plaintiff in error.

George R. Craig, U. S. Atty., of Albuquerque, N. M., and Albert H. Clancy, Asst. U. S. Atty., of Santa Fé, N. M.

Before LEWIS and KENYON, Circuit Judges, and YOUMANS, District Judge.

YOUMANS, District Judge. Plaintiff in error, Charles A. Roberson, together with six others, was indicted under section 215 of the Penal Code (Comp. St. § 10385) upon the charge of devising a scheme to defraud to be executed by the use of the United States mails. There are 36 errors assigned. Many of those assignments were merely repetitions. There were two indictments, which were consolidated for trial. The codefendants of Roberson were acquitted. Roberson was found guilty upon three counts in one indictment, and upon two counts in the other indictment.

[1] I. The first error insisted upon is that there was a fatal variance between the consolidated indictments and the evidence in this: That it was alleged in the indictments that the scheme to defraud was devised "before and on, to wit, December 15, 1917." The scheme was alleged to be one by which persons were to be induced "to send and pay their moneys to defendants under their own names respectively, and under the name of the Cannon Ball Motor Company, a corporation organized under the laws of the state of New Mexico, and under the name of the C. A. Roberson Brokerage Company, a corporation then and there organized under the laws of the state of New Mexico." It developed in the proof that these corporations referred to in the indictments were organized some days later than September 15, 1917. The proof shows that Roberson and his codefendants contemplated the organization of these two corporations, and actually sold what was termed "preorganization stock," and that the money obtained from such sales was, when received, intended to be and was actually turned over to these corporations when organized. The proof further shows that the articles of incorporation of the Cannon Ball Motor Company were actually drawn prior to September 15th, but were held for some days waiting the final decision of some of the incorporators. We do not think that this is a substantial variance.

II. The next error assigned is the action of the court in overruling the demurrers to the indictments. The indictments fairly contain all of the necessary allegations under section 215 of the Penal Code.

Plaintiff in error was fully advised of the charges. We think the court committed no error in overruling the demurrers.

[2] III. The next assignment of error insisted upon is with regard to the sustaining of an objection made by the attorney for the government in the examination of the defendant Roberson himself. He was testifying with reference to a certain contract entered into between him, representing the Cannon Ball Motor Company, and the Ghent Motor Company, in Illinois. The testimony was as follows:

"Q. Do you know as a matter of business routine—ordinary course of business—whether the motor company (that is, the Ghent Motor Company) fulfilled its contract or gave it up in any way? A. They did not fulfill the contract. They had practically abandoned the contract wholly at the time I was there the latter part of July.

"Q. Do you know why? A. They seemed to be on the rocks financially.

"Q. Did you have any discussion with the officers of the Ghent Motor Company?"

At this point the attorney for defendant in error objected to any discussion with the officers of the Ghent Motor Company with reference to the contract with that company, which contract had been introduced in evidence. Counsel for plaintiff in error now insists that this testimony should have gone in on the question of good faith on the part of the plaintiff in error. No offer was made by counsel for plaintiff in error to introduce this discussion with the officers of the Ghent Motor Company on the ground that he desired to show the good faith of Roberson. The court was not advised as to the purpose in eliciting this conversation. It appears clearly from the context that the objection of the United States Attorney was based upon the ground that the information to be obtained was hearsay evidence. If counsel for plaintiff in error had desired to introduce these conversations for the purpose of showing good faith, he should have so stated to the court, so that the court could have ruled upon the question in view of the claim made by counsel for plaintiff in error. In view of such failure, we do not think that the court erred in sustaining the objection.

[3] IV. It is also insisted by counsel for plaintiff in error that the court erred in sustaining an objection by the attorney for the government at another point in the examination of the defendant. The testimony appears in the record as follows:

"Q. You referred to an investigation made by the government inspectors of the Post Office Department; when was that investigation first made? A. The active beginning, as I remember, was some time about the 1st of April, 1919, when the inspectors called at our office and secured a list of our stock subscribers and began their active campaign.

"Q. How do you know—how are you able to say to this jury—that the effect of that investigation stayed, I believe was your word, the income of the company? A. By personal conversation with hundreds of stockholders. I might state further—

"Mr. Seth: We object to giving conversations with stockholders.

"The Court: Objection sustained.

"Mr. Renehan: Exception. I desire to prove by this witness in this connection that he knows as a matter of the routine business that stock salesmen gave that as a reason, whether true or not, why the stockholders did not pay their notes.

"The Court: Offer refused.

"Mr. Renehan: Exception."

This is clearly hearsay testimony. The defendant could have given the facts with reference to the failure of stockholders to pay after the investigation began. It was clearly not competent for Roberson to state what stockholders and stock salesmen told him.

[4] V. It is also contended that the court erred in permitting a witness by the name of Nelson to explain the words "we" or "they," used in conversation between him, on the one side, and Mr. Randell, one of the defendants, and the plaintiff in error, on the other. It is obvious from the testimony that Randell and the plaintiff in error, in using the word "we" in the connection in which it was used, referred to themselves. The only persons who could have complained of the testimony were those defendants who were not present. They, together with Randell, were acquitted. Therefore it is obvious that the plaintiff in error was not prejudiced by the testimony given by the witness Nelson.

[5] VI. It is also contended that the court erred in permitting witness McCammant to state that one Holloway a stock salesman stated to the witness that the Cannon Ball Motor Company had bought or contracted for the J. & C. Iron Mines and that those mines would be the property of the Cannon Ball Motor Company. The government introduced a letter written by Roberson, which reads as follows:

"Texico, New Mexico, April 15, 1918.

"To the Representatives in the Field:

"This letter is given for the purpose of advising you in the premises of the mining property which the Cannon Ball Motor Company is contemplating purchasing.

"This property lies south of Corona, on the Rock Island Railroad, in the state of New Mexico, and the owners of the property held a joint discussion with the board of directors of the Cannon Ball Motor Company, in view of consummating a merger of the mining interests with that of the Motor Company. The board of directors of the Motor Company look with favor upon acquiring ownership of this mining property, but owing to the fact that it is a big proposition, and that they would like to have a little more time to complete negotiations, they have effected an arrangement with the owners of the mines whereby the Cannon Ball Motor Company will operate the mines under option of purchase for a period of 60 days, and it is the consensus of opinion among the management of the Motor Company and the owners of the mining property that some time within this period of time full arrangements will be made and the deal consummated for the full acquisition of this property.

"Trusting that this will convey to you the information required in the premises, we are very truly,

"Cannon Ball Motor Company,

"By C. A. Roberson, Active Vice President."

The evident purpose of that letter was to give to stock salesmen information to be used by them regarding a proposed purchase of iron mines. In the light of that letter, we do not think that the court erred in admitting the statement of Holloway.

We have considered all of the errors argued in the brief and upon oral argument; and find nothing prejudicial to the plaintiff in error.

The judgment of the lower court will therefore be affirmed.